UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>ANHEUSER-BUSCH INBEV SA/NV, ANHEUSER-BUSCH COMPANIES, LLC,<br><br>and<br><br>CRAFT BREW ALLIANCE, INC.,<br><br>*Defendants*. | Civil Action No.: |

# COMPLAINT

1. The United States of America brings this civil antitrust action to enjoin Anheuser-Busch InBev SA/NV ("ABI") and Anheuser-Busch Companies, LLC ("AB Companies"), from acquiring Craft Brew Alliance, Inc. ("CBA"). The United States alleges as follows:

## I.   NATURE OF THE ACTION

2. On November 11, 2019, ABI, which has been a minority shareholder in CBA, agreed to acquire all of CBA's remaining shares in a transaction valued at approximately $220 million.

3. ABI is a global brewing company with the largest beer sales worldwide and in the United States, including in the state of Hawaii. CBA is a national brewing company with the

fifth-largest beer sales in Hawaii. As measured by 2019 revenue, ABI accounts for approximately 28% of all beer sales in Hawaii, and CBA accounts for approximately 13% of all beer sales in Hawaii.[1]

4. ABI proposes to acquire CBA through ABI's wholly-owned subsidiary AB Companies, a Delaware limited liability company. ABI is already a minority shareholder in CBA, owning approximately 31% of CBA's shares. ABI's proposed acquisition of CBA would give ABI 100% ownership of CBA, resulting in ABI's total control over all aspects of CBA's competitive decision-making, including pricing, marketing, and promotions.

5. As a result, the transaction would eliminate important head-to-head competition between ABI and CBA in Hawaii, and would facilitate price coordination following the transaction. This reduction in competition would likely result in increased prices and reduced innovation for beer consumers in Hawaii.

6. For these reasons, ABI's proposed acquisition of CBA violates Section 7 of the Clayton Act, 15 U.S.C. § 18, and should be permanently enjoined.

## II. JURISDICTION, VENUE, AND INTERSTATE COMMERCE

7. The United States brings this action pursuant to Section 15 of the Clayton Act, as amended, 15 U.S.C. § 25, to prevent and restrain Defendants ABI, AB Companies, and CBA from violating Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18. The Court has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

8. Venue is proper for ABI, a Belgian corporation, under Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. §§ 1391(b) and (c). Venue is proper for AB Companies,

---

[1] Market share calculations are based on distributor sales in Hawaii.

a Delaware limited liability company headquartered in St. Louis, Missouri, in this judicial district under 28 U.S.C. §§ 1391(b) and (c). Venue is proper for CBA, a Washington corporation, in this judicial district under Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. §§ 1391(b) and (c).

9. ABI, AB Companies, and CBA produce and sell beer in the flow of interstate commerce and their production and sale of beer substantially affect interstate commerce. ABI, AB Companies, and CBA have each consented to personal jurisdiction and venue in this judicial district for purposes of this action.

### III. THE DEFENDANTS AND THE UNITED STATES BEER INDUSTRY

#### A. The Defendants

10. ABI is a corporation organized and existing under the laws of Belgium, with its headquarters in Leuven, Belgium. ABI owns numerous major beer brands sold in the United States, including in Hawaii. These brands include Bud Light, Budweiser, Busch Light, Natural Light, Michelob Ultra, Stella Artois, and Golden Road.

11. AB Companies is a wholly-owned subsidiary of ABI and a Delaware limited liability company with its headquarters in St. Louis, Missouri. On November 11, 2019, it agreed to acquire all of CBA's outstanding shares in a transaction valued at approximately $220 million.

12. CBA is a corporation organized and existing under the laws of Washington, with its headquarters in Portland, Oregon. CBA owns several beer brands sold in the United States, including Widmer Brothers, Omission, Redhook, and Kona, a brand that originated in Hawaii and is especially popular in that state.

13. ABI currently holds approximately 31% of CBA's outstanding shares, delivers CBA brands of beer to wholesalers throughout the United States, and has a contract with CBA to brew some CBA brands of beer at ABI breweries. ABI also has the right to appoint two of the eight seats on CBA's Board of Directors.

**B. Beer Segments and Pricing**

14. Beer brands sold in Hawaii, like those sold in the United States in general, are often segmented based on price and quality. ABI groups beer into five segments: value, core, core-plus, premium, and super-premium (listed in order of increasing price and quality).

15. ABI owns beer brands in each beer segment in Hawaii: value (where its brands include Busch Light and Natural Light), core (where its brands include Bud Light and Budweiser), core-plus (where its brands include Michelob Ultra and Bud Light Lime), premium (where its brands include Michelob Ultra Pure Gold), and super-premium (where its brands include Stella Artois and Golden Road).

16. CBA's Kona brand is generally considered a premium beer. Consumers may "trade up" or "trade down" between segments in response to changes in price. For example, as the prices of core-plus brands approach the prices of premium brands, consumers are increasingly willing to "trade up" from core-plus brands to premium brands. Therefore, the competition provided by CBA's Kona in the premium segment serves as an important constraint on the ability of ABI to raise its beer prices not only in the premium segment, but also in core-plus and other beer segments.

## IV. THE RELEVANT MARKET

### A. Relevant Product Market

17. The relevant product market for analyzing the effects of the proposed acquisition is beer. Beer is usually made from a malted cereal grain, flavored with hops, and brewed via a fermentation process. Beer's taste, alcohol content, image (e.g., marketing and consumer perception), price, and other factors make it substantially different from other alcoholic beverages.

18. Other alcoholic beverages, such as wine and distilled spirits, are not reasonable substitutes that would discipline a small but significant and non-transitory increase in the price of beer, and relatively few consumers would substantially reduce their beer purchases or turn to alternatives in the event of such a price increase. Therefore, a hypothetical monopolist producer of beer likely would increase its prices by at least a small but significant and non-transitory amount.

### B. Relevant Geographic Market

19. The relevant geographic market for analyzing the effects of the proposed acquisition is no larger than the state of Hawaii. The relevant geographic market is best defined by the locations of the customers who purchase beer, rather than by the locations of breweries that produce beer. Brewers develop pricing and promotional strategies based on an assessment of local demand for their beer, local competitive conditions, and the local strength of different beer brands. Consumers buy beer near their homes and typically do not travel great distances to buy beer even when prices rise. Consumers in Hawaii are particularly unlikely to travel outside the state to buy beer, as they are located approximately 2,000 miles from the mainland United States.

5

20. For these reasons, a hypothetical monopolist of beer sold in Hawaii likely would increase its prices in that market by at least a small but significant and non-transitory amount. Therefore, Hawaii is a relevant geographic market and "section of the country" within the meaning of Section 7 of the Clayton Act.

## V. ABI'S ACQUISITION OF CBA IS LIKELY TO RESULT IN ANTICOMPETITIVE EFFECTS

### A. The Transaction Would Increase Market Concentration Significantly

21. The proposed acquisition would increase market concentration significantly for beer in Hawaii. ABI and CBA would have a combined share of approximately 41% in the relevant market following the transaction. Market concentration is often one useful indicator of the level of competitive vigor in a market and the likely competitive effects of a merger. The more concentrated a market, and the more a transaction would increase concentration in a market, the more likely it is that the transaction would result in harm to consumers by meaningfully reducing competition.

22. Concentration in relevant markets is typically measured by the Herfindahl-Hirschman Index (or "HHI," defined and explained in Appendix A). Markets in which the HHI is between 1,500 and 2,500 are considered moderately concentrated. Mergers that increase the HHI by more than 100 points and result in a moderately concentrated market potentially raise significant competitive concerns. *See* U.S. Dep't of Justice & Fed. Trade Comm'n, *Horizontal Merger Guidelines* § 5.3 (revised Aug. 19, 2010) ("Merger Guidelines"), https://www.justice.gov/atr/horizontal-merger-guidelines-08192010.

23. The transaction would result in a moderately concentrated market with a post-acquisition HHI of nearly 2,500 points, just below the threshold denoting a highly concentrated market. Moreover, the HHI would increase as a result of the transaction by

6

more than 700 points. Therefore, ABI's proposed acquisition of CBA potentially raises significant competitive concerns. *See* Merger Guidelines § 5.3.

24. These concentration measures likely understate the extent to which the transaction would result in anticompetitive effects such as higher prices and less innovation in the relevant market. As explained in Section V.C., the market for beer in Hawaii shows signs of vulnerability to coordinated conduct, and the transaction is likely to enhance that vulnerability. Those conditions make the transaction more likely to raise significant competitive concerns than the measures of concentration alone would indicate. *See* Merger Guidelines § 7.1.

**B. ABI's Acquisition of CBA Would Eliminate Head-to-Head Competition Between ABI and CBA**

25. Today, ABI and CBA compete directly against each other in Hawaii. In that state, CBA's Kona brand competes closely with ABI's Stella Artois and Michelob Ultra brands, and also competes with ABI's Bud Light and Budweiser brands. Recent developments and product innovations have further enhanced the degree of competition between ABI and CBA. For example, CBA recently introduced Kona Light, a lower calorie brand similar to ABI's low-calorie offerings like ABI's Michelob Ultra and Bud Light. CBA's share of the beer market in Hawaii has been among the fastest growing in the state over the past seven years. ABI's proposed acquisition of CBA likely would substantially lessen this current head-to-head competition between ABI and CBA in Hawaii, in violation of Section 7 of the Clayton Act.

26. Moreover, competition between ABI and CBA in Hawaii is poised to increase in the future. CBA is investing in its business in Hawaii, and it has plans to grow its share of

beer volume sold in Hawaii by about 25% by 2021.  CBA is also constructing a new brewery in Hawaii that is scheduled to become operational in the next few months.

27. ABI has plans to grow its share of beer in the premium segment.  In recent years, consumer preferences have shifted toward the premium and super-premium segments.  Because ABI's positions in the value, core, and core-plus segments are stronger than its positions in the premium and super-premium segments, this trend toward the premium and super-premium segments has threatened ABI's overall market share of beer and made ABI's plans to expand its share of beer in the premium segment more urgent.  These plans include the introduction of new premium brands and other brand innovations.  CBA's Kona is positioned as a premium beer in Hawaii.  Therefore, ABI's increased focus on the premium segment would increase competition with CBA's Kona.

28. For these reasons, competition between ABI and CBA in Hawaii likely would grow significantly in the absence of the proposed acquisition.  ABI's acquisition of CBA, therefore, is likely to substantially lessen this future potential competition between ABI and CBA, also in violation of Section 7 of the Clayton Act.

**C. ABI's Acquisition of CBA Would Facilitate Price Coordination**

29. Historically, ABI has employed a "price leadership" strategy throughout the United States, including in Hawaii.  According to this strategy, ABI, with the largest beer sales in the United States and Hawaii, seeks to generate industry-wide price increases by pre-announcing its own price increases and purposefully making those price increases transparent to the market so its primary competitors will follow its lead.  These announced price increases, which can vary by geography because of different competitive conditions, typically cover a broad range of beer brands and packages (e.g., container and size).  After

8

announcing price increases, ABI tracks the degree to which its primary competitors match its price increases. Depending on the competitive response, ABI will either maintain, adjust, or rescind an announced price increase.

30. For many years, Molson Coors Beverage Company ("Molson Coors"), the brewer with the second-largest beer sales in the United States and owner of many brands sold in Hawaii such as Miller Lite, Coors Light, and Blue Moon, has followed ABI's announced price increases in Hawaii to a significant degree. Molson Coors's willingness to follow ABI's announced price increases is constrained, however, by the diversion of sales to other competitors who are seeking to gain share, including CBA and its Kona brand.

31. By acquiring CBA, ABI would gain control over Kona's pricing and would likely increase Kona's price, thereby eliminating a significant constraint on Molson Coors's willingness to follow ABI's announced price increases in Hawaii. By reducing Kona's constraint on Molson Coors's willingness to increase prices, the acquisition likely increases the ability of ABI to facilitate price coordination, thereby resulting in higher prices for beer sold in Hawaii. For this reason, ABI's acquisition of CBA likely would substantially lessen competition in Hawaii in violation of Section 7 of the Clayton Act.

## VI. ABSENCE OF COUNTERVAILING FACTORS

32. New entry and expansion by competitors likely will not be timely and sufficient in scope to prevent the acquisition's likely anticompetitive effects. Barriers to entry and expansion within Hawaii include: (i) the substantial time and expense required to build a brand's reputation; (ii) the substantial sunk costs for promotional and advertising activity needed to secure the distribution and placement of a new entrant's beer in retail outlets; (iii) the time and cost of building new breweries and other facilities; and (iv) the difficulty of

developing an effective network of beer distributors with incentives to promote and expand a new entrant's sales.

33. The anticompetitive effects of the proposed acquisition are not likely to be eliminated or mitigated by any efficiencies the proposed acquisition may achieve.

## VII. VIOLATION ALLEGED

34. The United States hereby incorporates the allegations of paragraphs 1 through 33 above as if set forth fully herein.

35. The proposed transaction likely would substantially lessen competition in interstate trade and commerce, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and likely would have the following anticompetitive effects, among others:

(a) head-to-head competition between ABI and CBA for beer in Hawaii would be substantially lessened;

(b) the ability and incentive of ABI to coordinate higher prices for beer in Hawaii would be substantially increased; and

(c) competition generally in the market for beer in Hawaii would be substantially lessened.

## REQUESTED RELIEF

The United States requests:

1. That the proposed acquisition be adjudged to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

2. That Defendants be permanently enjoined and restrained from carrying out the proposed transaction or from entering into or carrying out any other agreement,

10

    understanding, or plan by which ABI would acquire CBA, be acquired by, or merge with CBA;

3. That the United States be awarded its costs for this action; and

4. That the United States be awarded such other relief as the Court may deem just and proper.

Dated: September 18, 2020

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

/s/
MAKAN DELRAHIM
Assistant Attorney General for Antitrust

/s/
BERNARD A. NIGRO, JR.
Principal Deputy Assistant Attorney General

/s/
MICHAEL F. MURRAY
Deputy Assistant Attorney General

/s/
KATHLEEN S. O'NEILL
Senior Director of Investigations & Litigation

/s/
ROBERT A. LEPORE
Chief
Transportation, Energy & Agriculture Section

/s/
PATRICIA C. CORCORAN
Assistant Chief
Transportation, Energy & Agriculture Section

Jeffrey B. Jensen
United States Attorney
Eastern District of Missouri

/s/
NICHOLAS P. LLEWELLYN (MO#43839)
Assistant United States Attorney
Chief, Civil Division
Thomas F. Eagleton U.S. Courthouse
111 S. 10th Street, 20th Floor
St. Louis, MO  63102
Tel: (314) 539-7637
Fax: (314) 539-2287
Email: Nicholas.Llewellyn@usdoj.gov

/s/
JILL C. MAGUIRE* (DC#979595)
Assistant Chief
Healthcare & Consumer Products Section

DON P. AMLIN
GRANT A. BERMANN
DAVID C. KELLY
WILLIAM M. MARTIN
MICHAEL T. NASH

U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4100
Washington, DC 20530
Tel: (202) 598-8805
Fax: (202) 307-5802
Email: jill.maguire@usdoj.gov

Attorneys for the United States

*Attorney of Record

## APPENDIX A

## DEFINITION OF THE HERFINDAHL-HIRSCHMAN INDEX

"HHI" means the Herfindahl-Hirschman Index, a commonly accepted measure of market concentration.  It is calculated by squaring the market share of each firm competing in the market and then summing the resulting numbers.  For example, for a market consisting of four firms with shares of 30 percent, 30 percent, 20 percent, and 20 percent, the HHI is 2,600 ($30^2 + 30^2 + 20^2 + 20^2 = 2,600$).  The HHI takes into account the relative size distribution of the firms in a market and approaches zero when a market consists of a large number of small firms.  The HHI increases both as the number of firms in the market decreases and as the disparity in size between those firms increases.  Markets in which the HHI is between 1,500 and 2,500 are considered to be moderately concentrated.  *See* U.S. Dep't of Justice & Fed. Trade Comm'n, Horizontal Merger Guidelines § 5.3 (revised Aug. 19, 2010), https://www.justice.gov/atr/horizontal-merger-guidelines-08192010.  Transactions that increase the HHI by more than 100 points in moderately concentrated markets potentially raise significant competitive concerns under the guidelines issued by the U.S. Department of Justice and Federal Trade Commission.  *See id*.