**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | Civil Action No.: 4:20-cv-01282-SRC |
| v. | |
| ANHEUSER-BUSCH INBEV SA/NV, ANHEUSER-BUSCH COMPANIES, LLC, | |
| and | |
| CRAFT BREW ALLIANCE, INC., | |
| *Defendants*. | |

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on September 18, 2020;[1]

AND WHEREAS, the United States and Defendants, Anheuser-Busch InBev SA/NV ("ABI"), Anheuser-Busch Companies, LLC ("AB Companies"), and Craft Brew Alliance, Inc. ("CBA"), have consented to entry of this Final Judgment without the taking of testimony,

---

[1] The United States filed the Proposed Final Judgment, Doc. 2-1, on the same day as it filed its Complaint.  The parties also entered into an Asset Preservation and Hold Separate Stipulation and Order, agreeing that the terms of the Proposed Final Judgment would apply even before entry of the Court's Final Judgment, meaning that some deadlines in the Proposed Final Judgment began to run upon filing of the Complaint.  Doc. 2-1, 14.  Accordingly, some of the deadlines in this Final Judgment have already run, or began running before the date the Court enters the Final Judgment.

without trial or adjudication of any issue of fact or law, and without this Final Judgment

constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to make a divestiture to remedy the loss of

competition alleged in the Complaint;

AND WHEREAS, Defendants represent that the divestiture and other relief required by

this Final Judgment can and will be made and that Defendants will not later raise a claim of

hardship or difficulty as grounds for asking the Court to modify any provision of this Final

Judgment;

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

## I.     JURISDICTION

The Court has jurisdiction over the subject matter of and each of the parties to this action.

The Complaint states a claim upon which relief may be granted against Defendants under

Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II.     DEFINITIONS

As used in this Final Judgment:

A.     "Acquirer" means PV Brewing or any other entity to which Defendants divest the

Divestiture Assets.

B.     "ABI" means Defendant Anheuser-Busch InBev SA/NV, a Belgian corporation

with its headquarters in Leuven, Belgium, its successors and assigns, and its subsidiaries,

divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers,

managers, agents, and employees.

C.     "AB Companies" means Defendant Anheuser-Busch Companies, LLC, a wholly-

owned subsidiary of ABI and a Delaware limited liability company with its headquarters in St. Louis,

Missouri, its successors and assigns, and its subsidiaries (including the Hawaii WOD), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D.    "CBA" means Defendant Craft Brew Alliance, Inc., a Washington corporation with its headquarters in Portland, Oregon, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

E.    "Covered Entity" means any Beer brewer, importer, distributor, or brand owner (other than ABI) that derives more than $3.75 million in annual gross revenue from Beer sold for further resale in the State of Hawaii, or from license fees generated by such Beer sales in the State of Hawaii.

F.    "Covered Interest" means ownership or control of any Beer brewing assets of, or any Beer brand assets of, or any Beer distribution assets of, or any interest in (including any financial, security, loan, equity, intellectual property, or management interest), a Covered Entity; except that a Covered Interest shall not include (i) a Beer brewery or Beer brand located outside the State of Hawaii that does not generate at least $3.75 million in annual gross revenue from Beer sold for resale in the State of Hawaii; (ii) a license to distribute a non-ABI Beer brand where said distribution license does not generate at least $1 million in annual gross revenue in the State of Hawaii; or (iii) a Beer distributor which does not generate at least $1 million in annual gross revenue in the State of Hawaii.

G.    "PV Brewing" means PV Brewing Partners, LLC, a Delaware limited liability company with its headquarters in Overland Park, Kansas, its successors and assigns, and its

3

subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors,

officers, managers, agents, and employees.

  H.  "Kona Hawaii" means Kona Brewery LLC, a Hawaii limited liability company

with its headquarters in Kailua-Kona, Hawaii, its successors and assigns, and its subsidiaries,

divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers,

managers, agents, and employees.

  I.  "Divestiture Assets" means all of Defendants' rights, titles, and interests in and to

all property and assets, tangible and intangible, wherever located, related to or used or held for

use in connection with Kona Hawaii, including, but not limited to:

    1.  the following facilities (the "Divestiture Facilities"):

      a.  the restaurant located at 7192 Kalaniana'ole Highway, Honolulu,

        Hawaii 96825 ("Koko Marina Pub");

      b.  the brewery and brewpub located at 74-5612 Pawai Place, Kailua-

        Kona, Hawaii, 96740 (the "Kona Pub and Brewery"); and

      c.  the New Kona Brewery;

    2.  all rights of the Acquirer under the Kona IP License;

    3.  all tangible personal property, including, but not limited to, machinery and

manufacturing equipment, tooling and fixed assets, vehicles, inventory, merchandise, office

equipment and furniture, materials, computer hardware and supplies;

    4.  all contracts, contractual rights, and customer relationships; and all other

agreements, commitments, and understandings, including, but not limited to, teaming

arrangements, leases, certifications, and supply agreements;

5.      all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations issued or granted by any governmental organization, and all pending applications or renewals;

6.      all records and data, including (a) customer lists, accounts, sales, and credit records, (b) production, repair, maintenance, and performance records, (c) manuals and technical information CBA provides to its own employees, customers, suppliers, agents, or licensees, (d) records and research data concerning historic and current research and development activities, including, but not limited, to designs of experiments and the results of successful and unsuccessful designs and experiments, and (e) drawings, blueprints, and designs;

7.      all intellectual property owned, licensed, or sublicensed, either as licensor or licensee, including (a) patents, patent applications, and inventions and discoveries that may be patentable, (b) registered and unregistered copyrights and copyright applications, and (c) registered and unregistered trademarks, trade dress, service marks, service names, trade names, and trademark applications; and

8.      all other intangible property, including (a) commercial names and d/b/a names, (b) technical information, (c) computer software and related documentation, know-how, trade secrets, design protocols, specifications for materials, specifications for parts, specifications for devices, safety procedures (e.g., for the handling of materials and substances), quality assurance and control procedures, (d) design tools and simulation capabilities, and (e) rights in internet web sites and internet domain names.

*Provided, however*, that the assets specified in Paragraphs II.I.1.-8., do not include (a) ownership of the Kona IP; (b) intellectual property associated with the sale of Kona Products outside the State of Hawaii; (c) Defendants' facilities located outside Hawaii that are used to

brew, develop, package, import, distribute, market, promote, or sell Kona Products; or (d) AB Companies' wholly-owned distributor located in the State of Hawaii.

J.      "Beer" is defined for purposes herein as any fermented beverage, brewed or produced from malt, wholly or in part, or from rice, grain of any kind, bran, glucose, sugar, and molasses when such items are used as a substitute for malt, or from honey, fruit, fruit juice, fruit concentrate, herbs, spices, or other food materials.  For the avoidance of doubt, Beer, as defined herein, does not include any distilled alcoholic beverages (as defined as of September 1, 2020 in 27 C.F.R. Section 5.11) or wine (as defined as of September 1, 2020 in 27 C.F.R. 410, except that irrespective of the foregoing definition, hard cider shall be included within the definition of Beer herein).

K.      "Distributor" means a wholesaler in the State of Hawaii who acts as an intermediary between a brewer or importer of Beer and a retailer of Beer.

L.      "Hawaii WOD" means Anheuser-Busch Sales of Hawaii, Inc., which is AB Companies' wholly-owned distributor in the State of Hawaii.

M.      "Kona Products" means (1) all products produced by Defendants using the "Kona" brand name at any time after November 11, 2019, and (2) all products produced by Acquirer using the "Kona" brand name.

N.      "Kona IP" means all intellectual property used or held for use in connection with the brewing, developing, packaging, importing, distributing, marketing, promoting, or selling of Kona Products in Hawaii.  This includes intellectual property connected to the "Kona" brand name (and all associated trademarks, service marks, and services names) used or held for use in connection with the brewing, developing, packaging, importing, distributing, marketing, promoting, or selling of Kona Products in the State of Hawaii.

6

O.     "Kona IP License" means an exclusive, irrevocable, fully paid-up, royalty-free, perpetual license to the Kona IP for use in the State of Hawaii.

P.     "New Brewery Completion" means the achievement by Defendants of an average production capacity of 1,500 barrels of saleable Beer each calendar week for three consecutive calendar weeks at the New Kona Brewery.

Q.     "New Kona Brewery" means the brewery located at Lot 16 in Kailua-Kona, Hawaii.

R.     "Relevant Personnel" means all full-time, part-time, or contract employees of Kona Hawaii, wherever located, whose job responsibilities relate in any way to the brewing, developing, packaging, importing, distributing, marketing, promoting, or selling of Kona Products in the State of Hawaii, at any time between November 11, 2019, and the date on which the Divestiture Assets are divested to Acquirer.

S.     "Transaction" means AB Companies' proposed acquisition of the remaining shares of CBA that AB Companies does not already own.

## III.     APPLICABILITY

A.     This Final Judgment applies to ABI, AB Companies, and CBA, as defined above, and all other persons in active concert or participation with any Defendant who receive actual notice of this Final Judgment.

B.     If, prior to complying with Section IV and Section V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of business units that include the Divestiture Assets, Defendants must require any purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from Acquirer.

## IV.     DIVESTITURE

A.      Defendants are ordered and directed, within 10 calendar days after the Court's entry of the Asset Preservation and Hold Separate Stipulation and Order in this matter, to divest the Divestiture Assets in a manner consistent with this Final Judgment to PV Brewing or to another Acquirer acceptable to the United States, in its sole discretion.  The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed 60 calendar days in total and will notify the Court of any extensions.

B.      Defendants are ordered and directed, within 180 calendar days after the Court's entry of the Asset Preservation and Hold Separate Stipulation and Order in this matter, to achieve New Brewery Completion in a manner consistent with this Final Judgment to PV Brewing or to another Acquirer acceptable to the United States, in its sole discretion.

C.      Defendants must use their best efforts to divest the Divestiture Assets as expeditiously as possible and may not take any action to impede the permitting, operation, or divestiture of the Divestiture Assets.  To incentivize Defendants to achieve New Brewery Completion within 180 calendar days after the Court's entry of the Asset Preservation and Hold Separate Stipulation and Order in this matter, beginning on calendar day 181 Defendants are ordered to pay to the United States $25,000 per day until they achieve New Brewery Completion.  If Defendants demonstrate to the United States that unanticipated material difficulties have resulted in unavoidable additional delays to New Brewery Completion, the United States may, in its sole discretion, agree to forgo some or all of the payments.

D.      Unless the United States otherwise consents in writing, divestiture pursuant to this Final Judgment must include the entire Divestiture Assets and must be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by Acquirer as part of a viable, ongoing business of the brewing, developing, packaging,

8

importing, distributing, marketing, promoting, and selling of Beer in the State of Hawaii, and that the divestiture to Acquirer will remedy the competitive harm alleged in the Complaint.

E.      The divestiture must be made to an Acquirer that, in the United States' sole judgment, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) to compete effectively in the brewing, developing, packaging, importing, distributing, marketing, promoting, and selling of Beer in the State of Hawaii.

F.      The divestiture must be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between Acquirer and Defendants gives Defendants the ability unreasonably to raise Acquirer's costs, to lower Acquirer's efficiency, or otherwise to interfere in the ability of Acquirer to compete effectively.

G.      In the event Defendants are attempting to divest the Divestiture Assets to an Acquirer other than PV Brewing, Defendants promptly must make known, by usual and customary means, the availability of the Divestiture Assets.  Defendants must inform any person making an inquiry regarding a possible purchase of the Divestiture Assets that the Divestiture Assets are being divested in accordance with this Final Judgment and must provide that person with a copy of this Final Judgment.  Defendants must offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets that are customarily provided in a due-diligence process; *provided, however,* that Defendants need not provide information or documents subject to the attorney-client privilege or work-product doctrine.  Defendants must make all information and documents available to the United States at the same time that the information and documents are made available to any other person.

9

H.      Defendants must provide prospective Acquirers with (1) access to make inspections of the Divestiture Assets; (2) access to all environmental, zoning, and other permitting documents and information; and (3) access to all financial, operational, or other documents and information customarily provided as part of a due diligence process.  Defendants also must disclose all encumbrances on any part of the Divestiture Assets, including on intangible property.

I.      Defendants must cooperate with and assist Acquirer to identify and hire all Relevant Personnel.

1.      Within 10 business days following the filing of the Complaint in this matter, Defendants must identify all Relevant Personnel to Acquirer and the United States, including by providing organization charts covering all Relevant Personnel.

2.      Within 10 business days following receipt of a request by Acquirer or the United States, Defendants must provide to Acquirer and the United States the following additional information related to Relevant Personnel: name; job title; current salary and benefits including most recent bonus paid, aggregate annual compensation, current target or guaranteed bonus, if any, and any other payments due to or promises made to the employee; descriptions of reporting relationships, past experience, responsibilities, and training and educational histories; lists of all certifications; and all job performance evaluations.  If Defendants are barred by any applicable law from providing any of this information, Defendants must provide, within 10 business days following receipt of the request, the requested information to the full extent permitted by law and also must provide a written explanation of Defendants' inability to provide the remaining information.

3.      At the request of Acquirer, Defendants must promptly make Relevant Personnel available for private interviews with Acquirer during normal business hours at a mutually agreeable location.

4.      Defendants must not interfere with any effort by Acquirer to employ any Relevant Personnel.  Interference includes, but is not limited to, offering to increase the salary or improve the benefits of Relevant Personnel unless the offer is part of a company-wide increase in salary or benefits that was announced prior to November 11, 2019, or has been approved by the United States, in its sole discretion.  Defendants' obligations under this Paragraph IV.I.4. will expire six months after the divestiture of the Divestiture Assets pursuant to this Final Judgment.

5.      For Relevant Personnel who elect employment with Acquirer within six months of the date on which the Divestiture Assets are divested to Acquirer, Defendants must waive all non-compete and non-disclosure agreements, vest all unvested pension and other equity rights, and provide all benefits that those Relevant Personnel otherwise would have been provided had the Relevant Personnel continued employment with Defendants, including, but not limited to, any retention bonuses or payments. Defendants may maintain reasonable restrictions on disclosure by Relevant Personnel of Defendants' proprietary non-public information that is unrelated to the Divestiture Assets and not otherwise required to be disclosed by this Final Judgment.

6.      For a period of 12 months from the date on which the Divestiture Assets are divested to Acquirer, Defendants may not solicit to rehire Relevant Personnel who were hired by Acquirer within six months of the date on which the Divestiture Assets are divested to Acquirer unless (a) an individual is terminated or laid off by Acquirer or (b) Acquirer agrees in writing that Defendants may solicit to rehire that individual.  Nothing in this Paragraph IV.I.6.

11

prohibits Defendants from advertising employment openings using general solicitations or advertisements and rehiring Relevant Personnel who apply for an employment opening through a general solicitation or advertisement.

J.      Defendants must warrant to Acquirer that the New Kona Brewery will be operational and without material defect upon the date of New Brewery Completion.

K.      Defendants must warrant to Acquirer that (1) except as provided in Paragraph IV.J. above, the Divestiture Assets will be operational and without material defect on the date of their transfer to Acquirer; (2) there are no material defects in the environmental, zoning, or other permits pertaining to the operation of the Divestiture Assets; and (3) Defendants have disclosed all encumbrances on any part of the Divestiture Assets, including on intangible property. Following the sale of the Divestiture Assets, Defendants must not undertake, directly or indirectly, challenges to the environmental, zoning, or other permits pertaining to the operation of the Divestiture Assets.

L.      Defendants must assign, subcontract, or otherwise transfer all contracts, agreements, and customer relationships (or portions of such contracts, agreements, and customer relationships) included in the Divestiture Assets, including all supply and sales contracts, to Acquirer; *provided, however,* that for any contract or agreement that requires the consent of another party to assign, subcontract, or otherwise transfer, Defendants must use best efforts to accomplish the assignment, subcontracting, or transfer.  Defendants must not interfere with any negotiations between Acquirer and a contracting party.

M.      Defendants must make best efforts to assist Acquirer to obtain all necessary licenses, registrations, and permits to operate Kona Hawaii, including, but not limited to, the New Kona Brewery.  Until Acquirer obtains the necessary licenses, registrations, and permits,

12

Defendants must provide Acquirer with the benefit of Defendants' licenses, registrations, and permits to the full extent permissible by law.

N.     At the option of Acquirer, and subject to approval by the United States in its sole discretion, on or before the date on which the Divestiture Assets are divested to Acquirer, Defendants must enter into a non-exclusive supply contract or contracts for the production, packaging, and delivery of Beer sufficient to meet Acquirer's needs, as determined by Acquirer, for a period of up to three years, on terms and conditions reasonably related to market conditions for the production, packaging, and delivery of Beer. All amendments to or modifications of any provision of any such supply contract are subject to approval by the United States, in its sole discretion. If the Acquirer is PV Brewing, the Acquirer, in its sole discretion, may renew any such supply contract for two one-year periods.  For any Acquirer that is not PV Brewing, the United States, in its sole discretion, may approve one or more extensions of any such supply contract, for a total of up to an additional two years.  If Acquirer seeks an extension of the term of any supply contract, Defendants must notify the United States in writing at least two months prior to the date the supply contract expires.

O.     At the option of Acquirer, and subject to approval by the United States in its sole discretion, on or before the date on which the Divestiture Assets are divested to Acquirer, the Hawaii WOD must enter into a distribution agreement for distribution of Beer in the State of Hawaii sufficient to meet Acquirer's needs, as determined by Acquirer, for a term determined by Acquirer, on terms and conditions reasonably related to market conditions for the distribution of Beer in the State of Hawaii.  Beginning one year after the effective date of such distribution agreement, Acquirer shall have the right, upon 60 days' written notice to the Hawaii WOD, to terminate without cause that distribution agreement.  All amendments to or modifications of any

provision of such distribution agreement are subject to approval by the United States, in its sole discretion.

P.      At the option of Acquirer, and subject to approval by the United States in its sole discretion, on or before the date on which the Divestiture Assets are divested to Acquirer, Defendants must enter into a contract to provide transition services for finance and accounting services, human resources services, supply and procurement services, brewpub consulting, on-island merchandising, brewing engineering, and information technology services and support, for a period of up to 18 months on terms and conditions reasonably related to market conditions for the provision of the transition services.  Any amendments to or modifications of any provision of a contract to provide transition services are subject to approval by the United States, in its sole discretion.  Acquirer may terminate a transition services agreement, or any portion of a transition services agreement, without cost or penalty at any time upon commercially reasonable notice. The employee(s) of Defendants tasked with providing transition services must not share any competitively sensitive information of Acquirer with any other employee of Defendants.

Q.      If any term of an agreement between Defendants and Acquirer, including, but not limited to, an agreement to effectuate the divestiture required by this Final Judgment, varies from a term of this Final Judgment, to the extent that Defendants cannot fully comply with both, this Final Judgment determines Defendants' obligations.

## V.      APPOINTMENT OF DIVESTITURE TRUSTEE

A.      If Defendants have not divested the Divestiture Assets within the period specified in Paragraph IV.A., Defendants must immediately notify the United States of that fact in writing. Upon application of the United States, which Defendants may not oppose, the Court will appoint

a divestiture trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.      After the appointment of a divestiture trustee by the Court, only the divestiture trustee will have the right to sell the Divestiture Assets.  The divestiture trustee will have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States, in its sole discretion, at a price and on terms as are then obtainable upon reasonable effort by the divestiture trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and will have other powers as the Court deems appropriate.  The divestiture trustee must sell the Divestiture Assets as quickly as possible.

C.      Defendants may not object to a sale by the divestiture trustee on any ground other than malfeasance by the divestiture trustee. Objections by Defendants must be conveyed in writing to the United States and the divestiture trustee within 10 calendar days after the divestiture trustee has provided the notice of proposed divestiture required under Section VI.

D.      The divestiture trustee will serve at the cost and expense of Defendants pursuant to a written agreement, on terms and conditions, including confidentiality requirements and conflict of interest certifications, that are approved by the United States.

E.      The divestiture trustee may hire at the cost and expense of Defendants any agents or consultants, including, but not limited to, investment bankers, attorneys, and accountants, that are reasonably necessary in the divestiture trustee's judgment to assist with the divestiture trustee's duties.  These agents or consultants will be accountable solely to the divestiture trustee and will serve on terms and conditions, including terms and conditions governing confidentiality requirements and conflict-of-interest certifications, that are approved by the United States in its sole discretion.

15

F.      The compensation of the divestiture trustee and agents or consultants hired by the divestiture trustee must be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement that provides the divestiture trustee with incentives based on the price and terms of the divestiture and the speed with which it is accomplished.  If the divestiture trustee and Defendants are unable to reach agreement on the divestiture trustee's compensation or other terms and conditions of engagement within 14 calendar days of the appointment of the divestiture trustee by the Court, the United States may, in its sole discretion, take appropriate action, including by making a recommendation to the Court.  Within three business days of hiring an agent or consultant, the divestiture trustee must provide written notice of the hiring and rate of compensation to Defendants and the United States.

G.      The divestiture trustee must account for all monies derived from the sale of the Divestiture Assets sold by the divestiture trustee and all costs and expenses incurred. Within 30 calendar days of the date of the sale of the Divestiture Assets, the divestiture trustee must submit that accounting to the Court for approval.  After approval by the Court of the divestiture trustee's accounting, including fees for unpaid services and those of agents or consultants hired by the divestiture trustee, all remaining money must be paid to Defendants and the trust will then be terminated.

H.      Defendants must use their best efforts to assist the divestiture trustee to accomplish the required divestiture.  Subject to reasonable protection for trade secrets, other confidential research, development, or commercial information, or any applicable privileges, Defendants must provide the divestiture trustee and agents or consultants retained by the divestiture trustee with full and complete access to all personnel, books, records, and facilities of the Divestiture Assets. Defendants also must provide or develop financial and other information

16

relevant to the Divestiture Assets that the divestiture trustee may reasonably request. Defendants may not take any action to interfere with or to impede the divestiture trustee's accomplishment of the divestiture.

I.     The divestiture trustee must maintain complete records of all efforts made to sell the Divestiture Assets, including by filing monthly reports with the United States setting forth the divestiture trustee's efforts to accomplish the divestiture ordered by this Final Judgment.  The reports must include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring any interest in the Divestiture Assets and must describe in detail each contact with any such person.

J.     If the divestiture trustee has not accomplished the divestiture ordered by this Final Judgment within six months of appointment, the divestiture trustee must promptly provide the United States with a report setting forth: (1) the divestiture trustee's efforts to accomplish the required divestiture; (2) the reasons, in the divestiture trustee's judgment, why the required divestiture has not been accomplished; and (3) the divestiture trustee's recommendations for completing the divestiture. Following receipt of that report, the United States may make additional recommendations consistent with the purpose of the trust to the Court.  The Court thereafter may enter such orders as it deems appropriate to carry out the purpose of this Final Judgment, which may include extending the trust and the term of the divestiture trustee's appointment by a period requested by the United States.

K.     The divestiture trustee will serve until divestiture of all Divestiture Assets is completed or for a term otherwise ordered by the Court.

L.      If the United States determines that the divestiture trustee is not acting diligently or in a reasonably cost-effective manner, the United States may recommend that the Court appoint a substitute divestiture trustee.

## VI.    NOTICE OF PROPOSED DIVESTITURE

A.      Within two business days following execution of a definitive divestiture agreement, Defendants or the divestiture trustee, whichever is then responsible for effecting the divestiture, must notify the United States of a proposed divestiture required by this Final Judgment.  If the divestiture trustee is responsible for completing the divestiture, the divestiture trustee also must notify Defendants. The notice must set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets.

B.      Within 15 calendar days of receipt by the United States of this notice, the United States may request from Defendants, the proposed Acquirer, other third parties, or the divestiture trustee additional information concerning the proposed divestiture, the proposed Acquirer, and other prospective Acquirers.  Defendants and the divestiture trustee must furnish the additional information requested within 15 calendar days of the receipt of the request unless the United States provides written agreement to a different period.

C.      Within 45 calendar days after receipt of the notice required by Paragraph VI.A. or within 20 calendar days after the United States has been provided the additional information requested pursuant to Paragraph VI.B., whichever is later, the United States will provide written notice to Defendants and any divestiture trustee that states whether or not the United States, in its sole discretion, objects to Acquirer or any other aspect of the proposed divestiture.  Without

18

written notice that the United States does not object, a divestiture may not be consummated. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Paragraph V.C. of this Final Judgment.  Upon objection by Defendants pursuant to Paragraph V.C., a divestiture by the divestiture trustee may not be consummated unless approved by the Court.

D.      No information or documents obtained pursuant to this Section VI may be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party, including grand-jury proceedings, for the purpose of evaluating a proposed Acquirer or securing compliance with this Final Judgment, or as otherwise required by law.

E.      In the event of a request by a third party for disclosure of information under the Freedom of Information Act, 5 U.S.C. § 552, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7.  Persons submitting information to the Antitrust Division should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7.  Designations of confidentiality expire ten years after submission, "unless the submitter requests and provides justification for a longer designation period." *See* 28 C.F.R. § 16.7(b).

F.      If at the time that a person furnishes information or documents to the United States pursuant to this Section VI, that person represents and identifies in writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and marks each pertinent page of such material, "Subject to

claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States must give that person ten calendar days' notice before divulging the material in any legal proceeding (other than a grand-jury proceeding).

## VII.    FINANCING

Defendants may not finance all or any part of Acquirer's purchase of all or part of the Divestiture Assets made pursuant to this Final Judgment.

## VIII.    ASSET PRESERVATION AND HOLD SEPARATE OBLIGATIONS

Until the divestiture required by this Final Judgment has been accomplished, Defendants must take all steps necessary to comply with the Asset Preservation and Hold Separate Stipulation and Order entered by the Court.  Defendants must take no action that would jeopardize the divestiture ordered by the Court.

## IX.    AFFIDAVITS

A.    Within 20 calendar days of the filing of the Complaint in this matter, and every 30 calendar days thereafter until the divestiture required by this Final Judgment has been completed, Defendants each must deliver to the United States an affidavit, signed by AB Companies' and CBA's Chief Financial Officer and General Counsel, respectively, describing the fact and manner of Defendants' compliance with this Final Judgment.  The United States, in its sole discretion, may approve different signatories for the affidavits.

B.    Each affidavit must include: (1) the name, address, and telephone number of each person who, during the preceding 30 calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry

about acquiring, an interest in the Divestiture Assets and describe in detail each contact with such persons during that period; (2) a description of the efforts Defendants have taken to solicit buyers for and complete the sale of the Divestiture Assets and to provide required information to prospective Acquirers; and (3) a description of any limitations placed by Defendants on information provided to prospective Acquirers.  Objection by the United States to information provided by Defendants to prospective Acquirers must be made within 14 calendar days of receipt of the affidavit, except that the United States may object at any time if the information set forth in the affidavit is not true or complete.

   C.  Defendants must keep all records of any efforts made to divest the Divestiture Assets until one year after the divestiture has been completed.

   D.  Within 20 calendar days of the filing of the Complaint in this matter, Defendants also must each deliver to the United States an affidavit signed by AB Companies' and CBA's Chief Financial Officer and General Counsel, respectively, that describes in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment.  The United States, in its sole discretion, may approve different signatories for the affidavits.

   E.  If Defendants make any changes to the efforts and actions outlined in any earlier affidavits provided pursuant to Paragraph IX.D., Defendants must, within 15 calendar days after any change is implemented, deliver to the United States an affidavit describing those changes.

   F.  Defendants must keep all records of any efforts made to preserve the Divestiture Assets until one year after the divestiture has been completed.

   G.  Within 15 calendar days after New Brewery Completion, Defendants also must each deliver to the United States an affidavit, signed by AB Companies' Chief Financial Officer

and General Counsel and CBA's Chief Operating Officer and General Counsel, respectively, describing the fact and manner of Defendants' compliance with (1) New Brewery Completion, and (2) satisfaction of the warranty to Acquirer under Paragraph IV.J., including that the New Kona Brewery is operational and without material defect on the date of New Brewery Completion.  The United States, in its sole discretion, may approve different signatories for this affidavit.

## X.    COMPLIANCE INSPECTION

A.    For the purposes of determining or securing compliance with this Final Judgment or of related orders such as the Asset Preservation and Hold Separate Stipulation and Order or of determining whether this Final Judgment should be modified or vacated, upon written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, and reasonable notice to Defendants, Defendants must permit, from time to time and subject to legally recognized privileges, authorized representatives, including agents retained by the United States:

(1)    to have access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants relating to any matters contained in this Final Judgment; and

(2)    to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.      Upon the written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, Defendants must submit written reports or respond to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment.

C.      No information or documents obtained pursuant to this Section X may be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party, including grand jury proceedings, for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      In the event of a request by a third party for disclosure of information under the Freedom of Information Act, 5 U.S.C. § 552, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7.  Defendants submitting information to the Antitrust Division should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7.  Designations of confidentiality expire ten years after submission, "unless the submitter requests and provides justification for a longer designation period." *See* 28 C.F.R. § 16.7(b).

E.      If at the time that Defendants furnish information or documents to the United States pursuant to this Section X, Defendants represent and identify in writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure,"

the United States must give Defendants ten (10) calendar days' notice before divulging the material in any legal proceeding (other than a grand jury proceeding).

## XI.    NOTIFICATION

A.    Unless a transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), Defendants may not, without first providing at least thirty (30) calendar days advance notification to the United States, directly or indirectly acquire or license a Covered Interest in or from a Covered Entity.

B.    Defendants must provide the notification required by this Section XI in the same format as, and in accordance with the instructions relating to, the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations, as amended, except that the information requested in Items 5 through 8 of the instructions must be provided only about the brewing, developing, packaging, importing, distributing, marketing, promoting, or selling of Beer in the State of Hawaii.

C.    Notification must be provided at least 30 calendar days before acquiring any assets or interest, and must include, beyond the information required by the instructions, the names of the principal representatives who negotiated the transaction on behalf of each party, and all management or strategic plans discussing the proposed transaction.  If, within the 30 calendar days following notification, representatives of the United States make a written request for additional information, Defendants may not consummate the proposed transaction until 30 calendar days after submitting all requested information.

D.    Early termination of the waiting periods set forth in this Section XI may be requested and, where appropriate, granted in the same manner as is applicable under the

requirements and provisions of the HSR Act and rules promulgated thereunder.  This Section XI must be broadly construed, and any ambiguity or uncertainty regarding whether to file a notice under this Section XI should be resolved in favor of filing notice.

## XII.    NO REACQUISITION

Defendants may not reacquire any part of or any interest in the Divestiture Assets during the term of this Final Judgment.

## XIII.    RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV.    ENFORCEMENT OF FINAL JUDGMENT

A.    The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court.  Defendants agree that in a civil contempt action, a motion to show cause, or a similar action brought by the United States regarding an alleged violation of this Final Judgment, the United States may establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a preponderance of the evidence, and Defendants waive any argument that a different standard of proof should apply.

B.    This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the United States alleged was harmed by the challenged conduct.  Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court

in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.     In an enforcement proceeding in which the Court finds that Defendants have violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with other relief that may be appropriate. In connection with a successful effort by the United States to enforce this Final Judgment against a Defendant, whether litigated or resolved before litigation, that Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as all other costs including experts' fees, incurred in connection with that enforcement effort, including in the investigation of the potential violation.

D.     For a period of four years following the expiration of this Final Judgment, if the United States has evidence that a Defendant violated this Final Judgment before it expired, the United States may file an action against that Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt remedies; (3) additional relief needed to ensure the Defendant complies with the terms of this Final Judgment; and (4) fees or expenses as called for by this Section XIV.

## XV.     EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment will expire 10 years from the date of its entry , except that after five years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendants that the divestiture

has been completed and the continuation of this Final Judgment is no longer necessary or in the public interest.

## XVI.    PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment and the Competitive Impact Statement, public comments thereon, and the United States' response to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.


So Ordered this 13th day of April, 2021.


**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**

27